There we go. We're ready now for argument in Famous against Fuchs. Ms. Mullen. Good morning and may it please the court. Mr. Famous is entitled to an evidentiary hearing on the timeliness of his federal habeas petition and on his allegations of ineffective assistance of appellate and trial counsel. I'd like to begin with timeliness and I think it may be helpful to discuss how Mr. Famous's allegations fit together on a timeline to focus on what will be at issue at an evidentiary hearing and why he's entitled to that evidentiary hearing. So Mr. Famous Before you do that, Ms. Mullen, did he ever request an evidentiary hearing? Your Honor, I don't believe so, no. He presented these various allegations that I'll go through in his filings below. So he presented all of this evidence to the district court, but I don't believe he formally requested an evidentiary hearing. Has he waived it given that he didn't request it? Your Honor, I don't think so. I think in light of all of the documentation that he presented to the court, he squarely presented the issue of his timeliness. He presented all of this in his opposition to the state's motion to dismiss. That's a docket number 53. And no, Your Honor, I don't believe it's waived. So Mr. Famous didn't have his legal file in hand except for a few when he finally had his legal file in hand. And August 17, 2010, when he filed his petition, will be critical at an evidentiary hearing. And that's where I'd like to start. During that time period, Your Honors, Mr. Famous presents two sets of allegations, both of which entitle him to that evidentiary hearing. The first is his mental incompetence. Your Honors, again, at docket 53 below, he related detailed allegations that the disorders caused him to lose touch with reality, think rationally, fail to understand the proceedings. And he supported those allegations with verified medical records. Those are on pages 99 to 103 of the appendix. And those medical records are alarming, Your Honors. They document that he was being poisoned, that he was experiencing possible auditory and visual hallucinations, that he believed his bones were heating up and dissolving. At the time when he was admitted to mental health commitment, he suffered from racing thoughts, difficulty organizing his thinking, difficulty maintaining concentration. He was pretty active in other litigation during this period though, wasn't he? Your Honor, he filed about once in state court a year. We have one in 2006, one in 2007, and one in 2008. But Your Honor, I think those state court filings are offset or at least called into question in terms of whether he was lucid throughout that whole period by those medical records that, again, are alarming. Indeed, on page 100 of the appendix, he specifically talked to his doctor about having difficulty working on his losses. And the medical records also suggest that- But that wasn't until 2009. A little later in 2009, earlier that same year in July, a psychologist had found that his thought process was well organized. That's right, Your Honor. The medical records, at some points, he seems more lucid than others in the medical records. But Your Honor, at this point, Mr. Famous doesn't have to conclusively show that he's entitled to tolling. All he has to show to entitle himself to an evidentiary hearing is that there are facts that shed light on the period for which tolling is sought, and that if those allegations are substantiated at an evidentiary hearing, he would be entitled to tolling. So Your Honor, you're right. The medical records don't start until 2009, but they discuss his history of mental health struggles stretching well back before 2009. So I think an evidentiary hearing with the benefit of medical records before 2009 could help sort some of this out. And under the standard to which he's held at this point, Mr. Famous has satisfied that burden. And Your Honor, also, Mr. Famous alleges that the prison law library was inadequate, and under this court's cases in Estramera and Moore, he is entitled to an evidentiary hearing because right now we just don't have enough in the record to determine whether or not the law library was adequate. This court remanded for allegations almost identical to that in Moore, a case that the state doesn't acknowledge or cite in its brief. There, this court remanded where it, quote, could not glean from the record whether the prison library contained the relevant statute of limitations. That's on page 508 of Moore, and I think that's exactly the situation we have here. And just briefly, Your Honors. How is this question set up for decision? Do we have an affidavit from Famous or any other prisoner stating that the library lacks these resources? Your Honor, I don't believe it's an affidavit, but in document, in docket number 53 below on pages 108 and 109 of our appendix, in that opposition to the state motion to dismiss, he alleges that the EDPA statute of limitations was not contained in the prison law library. And where the record is similarly fair, courts have remanded for an evidentiary hearing. That his allegation as of right now is unrefuted, Your Honor. What would you- But it's not an allegation. It's not a statement under oath, right? It's just something that has been stated off the top of his head. Does he explain why he has this belief? No, Your Honor. It's- He doesn't say anything like, I asked the librarian for a copy of the habeas corpus statute, and the librarian said, we don't have that. That's right, Your Honor. I think the Ninth Circuit confronted a fairly similar situation in the case Whalum Hunt. Now, please, don't tell me what other courts appeals have held. I'm trying to figure out exactly what is in this record. What is the best evidence in this record that the prison law library does not have a copy of the habeas corpus statute? Your Honor, it's Mr. Famous's allegation at pages 108 and 109. Okay, that's it. That's what there is. No evidence. Yes, that's correct, Your Honor. Okay. That's what we have. But, Your Honor, I do think Whalum Hunt can be helpful because the record was similarly bare there, and the Ninth Circuit noted that the district court gave petitioner no opportunity to amend his petition or expand his declaration, and the state wasn't asked to respond to the petitioner's declaration. So, Your Honor, I think the Ninth Circuit confronted a similarly bare record, and there, they pointed out- Ms. Mullen, what would you expect to get here from an evidentiary hearing on the issue of the law library? Because the district court accepted in ruling that it was untimely that there was no AEDPA statute in the library. Your Honor, I think some of the things that Judge Easterbrook suggested could be helpful. What else could you- you got- the district court accepted the ultimate conclusion that you're asking for a hearing on, namely that the library didn't contain the AEDPA statute, but nonetheless found that tolling was not appropriate. So, I don't understand what the basis for a hearing would be on that particular issue, given that the court found in your client's favor. Well, in that case, Your Honor, then as a matter of law, Mr. Famous is entitled to tolling for that period under Estramera and Moore because an inadequate prison law library is a state-created impediment under Section 2244b1b. And just briefly, Your Honor, I'd like to touch on the period before 2007 when Mr. Famous didn't have his legal file in hand. Up until June 28, 2005, his file was withheld from him by his former attorney, Mr. Rosen. Under this court's case in Socia, the withholding of a former client's, now petitioner's, legal file by an attorney is extraordinary as a matter of law. I don't understand even the district court or the state to be quarreling with that proposition of for a few weeks, and then it was seized by prison officials from a fellow inmate, Mr. Madian, and withheld from Mr. Famous despite his repeated complaints seeking to get it back from July 2005 until April 30, 2007. And under this court's case in Weddington, intentional confiscation of a prisoner's habeas corpus petition and related legal papers by a corrections officer is extraordinary as a matter of law, and that's exactly what we have here, Your Honor. The state tries to argue that Weddington should be bound to its facts, that such a circumstance would only be extraordinary as a matter of law if the papers were taken from the petitioner himself rather than from another inmate, but Weddington can't be read that narrowly. Weddington cites to a case called Val Verde from the Second Circuit where the facts are almost identical to the facts here, where correctional officers seized the legal file from another inmate instead of from the inmate, and that holding applies here, and I believe that the court blessed that holding in Weddington by citing to Val Verde. Your Honors, if the panel has no further questions on timeliness, I'd like to touch briefly on the ineffective assistance allegations before I reserve the remainder of my time. So turning to the appellate counsel claim, Your Honors, the Wisconsin Court of Appeals decision rejecting Mr. Famous's appellate ineffective assistance claim unreasonably applied the law because it relied on a non-existent implicit finding that the circuit court expressly refused to make. At page 37 of the record, the Court of Appeals describes its affirmance of the circuit court as resting on an implicit finding that Famous did not tell Mr. Rosen about trial counsel's purportedly retaliatory refusal to call witnesses, but the circuit court didn't make any such finding implicit or otherwise. At pages 74 and 75 of the record, we see the circuit court expressly repeatedly refusing to make any such finding. Page 74, for some reason, Rosen determined the claim wasn't viable. Page 75, all I know is that Famous discussed the alibi witness issue with Mr. Rosen, and under this court's case, Taylor v. Browns, a state appellate court reading a non-existent implicit quote-unquote finding into a circuit court record that does not contain any such finding is unreasonable under 2254D. And finally, Your Honors, Mr. Famous is entitled to an evidentiary hearing. Your Honor, do you have a question? Just checking. Under 2254E2, Mr. Famous is entitled to an evidentiary hearing on both claims because there's insufficient in the state court record to adjudicate those claims, Your Honor, that no state court has ever reached Mr. Famous's underlying appellate and trial ineffective claims, so the state court record really isn't developed on that score, and he was diligent in attempting to pursue those claims in state court. Your Honor, if there's no questions, I'll reserve the remainder of my time. Certainly, Ms. Mullen. Thank you. Mr. Proxt. Good morning, and may it please the court. I'm Assistant Attorney General Robert Proxt, and I appear on behalf of Warden Fuchs in this matter, the respondent to Pelley. Your Honors, the district court here properly denied and dismissed Mr. Famous's petition before it. It did so following a motion to dismiss the petition as untimely. Mr. Proxt, I asked Ms. Mullen a lot of questions about what Famous put in the record. I have the same question for you. Did the state put in the record any evidence about what is in the library or isn't? Your Honor, I don't believe it did. It did respond to his claims, but I think the burden is squarely on Mr. Famous to show that there is an impediment, and part of— The—Famous certainly claimed that important information is missing from the library, and I would expect the state to respond by saying that's not true and here's why, but you chose not to. And then when Famous relied on appeal, on our Moore decision, you chose altogether to ignore it. Moore isn't cited in your brief. It isn't dealt with. Why shouldn't we view this litigation strategy, head in the sand, it seems to me, as forfeiting the state's defense? Well, Your Honor, as I say, I don't think that—I think the burden is on Mr. Famous to show that— It's a fairly simple point. If the appellant relies heavily on a particular case in the Court of Appeals, we expect the appellee to address it rather than ignore it. You chose to ignore it. That's your choice, but choices have consequences. Yes, Your Honor, and if I can speak to that. I don't think that—the reason why it's—I wouldn't say it was ignored, but I wouldn't say it's squarely applicable to our case. I think the Moore case is different factually and legally. Factually, as opposing counsel pointed out, they couldn't respond. If you think it's distinguishable, that's what you say in your brief. You don't ignore it in the brief and then say, oh, well, now I'm at argument. Now I will say what I should have put in the brief. That is not responsible advocacy. Understood, Your Honor, and point taken. I don't think that the—I think that the appellant is more efficient than it was to trigger some kind of responsibility on the respondent or state or whomever to further investigate. So, for example, as you've already pointed out, the only allegation we have, the only record of any kind that we have is Mr. Famous's own statement in his brief opposing our brief in a motion to dismiss. There's nothing about—and as you note, he prepares and submits affidavits with respect to his mental health and his alibi witnesses, but there's no evidence of any kind with respect to—and not even— What evidence, by the way, would you deem sufficient? You know, I suggested that Famous might have said, I went to the librarian and the librarian told me it's not there. Is there anything other than that that the state would think is sufficient to create an issue requiring a hearing? Well, as to this specific claim, I mean, that would be one case where it would certainly be warranted because then you have a genuine question of fact. If Mr. Famous says one thing and the law librarian says something else, that would be an issue of fact, a question of fact. I don't think we even have that here. I think we have a bare assertion in a brief in response to our motion to dismiss in which Mr. Famous says, as part of his justification for equitable tolling, he says the prison law library was inadequate, and specifically, it was inadequate because it didn't have a copy of the statute. I'm not aware of a case that says that this specific condition justifies equitable tolling. I understand Your Honor's point that Moore is instructive and on point as far as it relates to the specific availability of the statute here. And then, of course, there's S. Romero, which says Moore was just dictum, but now it's a holding. Yes, and to quote this court's decision in S. Romero, to hold that the absence of library access may be an impediment principle is not necessarily to say that the lack of access was an impediment for a given prisoner. In principle, it's a vital qualifier. Perhaps S. Romero had no need for a library. I think as we look at the types of claims that Mr. Famous is trying to present here, and let's think about the alibi evidence, for example, is there a reason why the library Mr. Famous was unable to bring that claim and was unaware that he needed to do so based upon the alleged lack of the statute of limitations in the law library? Is that a thing that prevented him from actually timely filing? And the other question we have is at some point— Maybe I'm just not clear, Mr. Probst. I can't believe we are here having this argument. I can't believe there is a law library in Wisconsin that does not have a copy of 2254 and 2255. We should not be arguing in the Court of Appeals about whether the law library has such a thing. This should have been pinned down in the district court, and we then wouldn't be here. But both sides have engaged in slipshod litigation, and we need to figure out the points that my opposing counsel made. I'd like to do that now. As to the timeliness or the necessity of an evidentiary hearing, I think the record is clear that Mr. Famous had many opportunities, many substantial opportunities to develop a record in state court as to his alibi witnesses. I think he chose not to do those things. He was provided with an evidentiary hearing. At that evidentiary hearing, he explicitly chose not to call his trial counsel. So we don't know, for example, whether or not this claim that the alibi witnesses were not called because of retaliation, because Mr. Famous sought to discharge his attorney during the trial. We don't know anything about whether that conversation happened, either from the trial lawyer's perspective or from the alleged alibi witnesses' perspective, because Mr. Famous did not produce them for a hearing. Despite being given the intention on Attorney Rosen, his post-convention and appellate counsel. So I think that this is very dissimilar from Davis v. Lambert, a case from this court in which the state of Illinois basically provided no opportunity for the petitioner to present and have his claims heard on the merits, to have an evidentiary hearing to try to prove them up. Mr. Famous had all those options and chose not to use them. So it would be a windfall to him if he were accorded an evidentiary hearing based on these claims, when the fact is that it was Mr. Famous who chose not to develop the record in state court. And I think that's clearly what the statute forbids, is when an applicant fails to develop the record in state court, they cannot then have a sort of test run in federal court subsequently, that that would be an end run around the rules of federal habeas. And the purpose, of course, is to review the propriety of state court action. And in this case, there was no state court action, or there was state court action, but there was no action on his alibi claims. And that is, again, because Mr. Famous chose not to pursue those avenues. So I hope that that is clear. As to the tolling for mental health, as your honors have already pointed out, there are periods of time during which Mr. Famous has submitted evidence that the documents he submitted before the district court showed that those things go back preceding his incarceration in this case, that he has had some mental health issues for a long time. The question is not whether he has mental health issues. The question is whether those issues prohibit him or prevent him in some meaningful way from arguing and raising his claims. And as your honors have already pointed out, he was engaged in substantial litigation in post-conviction court and appellate courts in Wisconsin, which tends to suggest that he was of litigating and understanding what he was doing. He filed a number of motions, both in circuit court and the court of appeals, and then, of course, ultimately the petition in 2010 here. So it's unclear to me that, and again, the burden is fairly on Mr. Famous to show this, to show that he's entitled to equitable tolling. The bare fact that he may have some mental illness is not sufficient to carry that burden. He has to show that that illness prevented him from filing. And I don't believe that the record supports that conclusion. Secondly, with respect to the prison confiscation or alleged confiscation of the materials, as we pointed out in our brief, two things of note. One is that Mr. Famous does not have the right to form out his legal work to another inmate and have a write-up for that person specifically to prepare it, because he has no right to counsel in these proceedings. So his decision to do so is really the cause of the issue here. His decision to send his a jailhouse lawyer, for lack of a better term, is really the cause of the issue. And the Wisconsin DOC officials, in accordance with their administrative code provision that I've also set out in our brief, they are not responsible for maintaining the property of another inmate in another inmate's cell. So his legal papers were not confiscated as in Weddington. They weren't intentionally withheld. They were delivered by Mr. Famous to somebody else for the purpose of preparing, well, legal work of some kind. And that decision, not any decision of the Department of Corrections, not any decision of a prison official, is the reason why, or the primary reason why, he didn't have his materials for that period of time. I also think it bears noting that this Court has observed that the fact that a person doesn't have their file is not necessarily, in and of itself, sufficient to establish tolling. As we've talked about with these alibi claims, Mr. Famous claims that at his trial in May of 1998, his trial lawyer decided not to call these alibi witnesses out of retaliation. That's something that he would have known about, obviously, at that time, in May of 1998. And yet, and yet, we see no evidence of that claim at any point until much, much later. I think the first, I have Candace Streeter's affidavit comes in 2000. It's not an affidavit, that's the other thing, as the District Court recognized, it's a statement. But the District Court took into consideration the timing of that evidence, and the source of the information as well. The fact that the two purported affidavits, which again are not affidavits because they are not notarized, from Mr. Famous's brother and sister come from 2013, 15 years after the trial. And the District Court, as it's entitled to do under law, looked askew at that, at that presentation, at the timing of it, and then the source of the information. So, and it is important to note that, again, the District Court was reviewing our motion to dismiss. It was not reviewing a, like in a normal habeas case where we file an answer in our transcripts and brief the issues on the merits. The District Court here simply decided and granted the motion to dismiss. It did not address the underlying claims. It only addressed the alibi evidence in the context of or lack thereof to those alibis. I also think it's clear from the, our brief and from the trial transcripts attached to it, that trial counsel, post-conviction counsel, and appellate counsel were not ineffective with respect to this alleged alibi evidence. You have testimony from Mr. Rosen, post-conviction and appellate counsel. And again, we don't have testimony from Mr. DeMarc, the trial counsel, because Mr. Famous chose not to call him. And again, I think that's a very clear choice that he made not to do. But Mr. Rosen testified without contradiction that he recalled meeting with Mr. Famous, but did not recall the alibi evidence or the witnesses ever being mentioned. And again, this was 15 years after that conversation would have happened. And the only reason for that delay is again, Mr. Famous's own decision to not raise those issues until that time. So I think it is, it's clear that, you know, this wasn't a case where there was a presentation of these alibi witnesses and those witnesses were simply not investigated. I don't think that that can be said. I do think the district court properly took into consideration the time and the source of that information. And again, I don't think it's reliable for that reason. That's a worthwhile decision. Oh, the other thing I guess I would point out is that Mr. Rosen did say that if he had been made aware of the alibi issues, he would have raised it, which is to say that, and he testified at some length at the Mockner hearing, had this issue actually been raised as Mr. Famous contends it was to him, he would have pursued it. He would have investigated it. And if an investigation yielded nothing, he would have not raised it, but there would be a record of that investigation of some further action by him. And there was not here. And finally, the evidence, you know, to meet the burden that Mr. Famous needs to meet, he has to show that this evidence is so strong that no reasonable juror would convict him. This evidence is sort of, the alibi evidence is very duplicative in my view. It's evidence, again, from people who claim they were in the house that day who weren't in the same location as where this sexual assault occurred, because the house is a two-level duplex, for lack of a better term, and the assault took place upstairs while other things were happening downstairs. So Mr. Famous's room is separate from that location. There was testimony at Mr. Famous's trial from his brother and from his mother-in-law that they didn't hear this assault happen, that they would have heard it because they were in the same location. So this evidence is really more of the same type of evidence. And I understand there's some distinctions in Candace's statement specifically, but really this evidence does not go to prove that Mr. Famous is, that no reasonable juror would find him guilty. If anything, it's additional evidence in an attempt to attack the victim's credibility, but it's not overwhelming. And again, the reason it's not overwhelming or not probative is because of the source and the timing of that evidence, and therefore the district court properly exercised its position. Thank you, Your Honor. Anything further, Ms. Mullen? A couple things, Your Honor. On the tolling, we've discussed the law library at some length, but I'd just like to point the court to more citation of a case called Egerton from the Fifth Circuit, which I think suggests that an allegation by a petitioner that the prison law library was inadequate can be enough if it goes unrefuted by the state throughout the litigation. In Egerton, petitioner brings an allegation much like Mr. Famous's here. There's a remand for an evidentiary hearing. The state doesn't put anything in the record, even given the opportunity. And then the court ultimately held that that allegation was enough because the state didn't avail itself of the opportunity to refute that allegation. So I think that applies here. On the mental health issue, Your Honor, the question at this stage is just whether Mr. Famous has alleged facts about whether his mental health issues impeded his ability to file just enough to get to an evidentiary hearing that he would be entitled to tolling. It's true, Your Honor, that he was occasionally litigating in state court during this time, but the mental health records also point out that he was suffering from periods of severe delusions and problems organizing his thoughts, possible hallucinations. And so the interaction between those two things is best sorted out at an evidentiary hearing. And again, in terms of the confiscation, the state blames Mr. Famous for this and suggests that because the file was seized from Mr. Maddion instead of from Mr. Famous, then prison officials are off the hook and prison officials didn't do anything wrong. But the discussions about petitioners giving their legal file to other inmates at their own risk is about whether the other inmates misplace them or don't give them back. They're not about whether prison officials affirmatively seize those files and refuse to give them back for over two years. That falls right into the heartland of Weddington, the holding that an intentional confiscation of a petitioner's legal file by prison officials is extraordinary as a matter of law. Very briefly, on the diligence point, the state, my friend on the other side, contends that Mr. Famous isn't entitled to an evidentiary hearing because he didn't do enough to try to get his facts into the record below. In their brief, the state characterizes Mr. Famous as, quote, choosing to expressly focus on Attorney Rosen at the pre-Machner hearing status conference. That's just not true, Your Honor. I would encourage the court to review pages 401 to 407 of the supplemental appendix. We read that interaction very differently than our friends on the other side. I would also point out that after that status hearing occurred on March 7th, 2006, this is pages 105 to 106 of the appendix, Famous thinks better of his acquiescence to the narrowing of the scope of the hearing, files a motion to subpoena additional witnesses. There's a hearing on March 21st, that's pages 424 to 26 of the record, where he renews that request, and then pages 37 to 38 of our appendix document that Mr. Famous filed an appeal after the circuit court denied that motion, Your Honor. Thank you. Mm-hmm. Thank you very much. And Ms. Mullen, the court thanks you for your willingness to accept the appointment in this case and your assistance to the court as well as your client.